IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CR-118-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| KESA LATONYA ELKERSON, | ) | |
| | ) | |
| Defendant. | ) | |

On May 18, 2009, pursuant to a plea agreement, Kesa Latonya Elkerson ("Elkerson" or "defendant") pleaded guilty to one count of making false statements in violation of 18 U.S.C. § 1001. The offense carried a maximum 60-month term of imprisonment. See 18 U.S.C. § 1001. On August 18, 2009, the court held a sentencing hearing. The court considered Elkerson's Presentence Investigation Report ("PSR"), all evidence presented at the hearing, and all arguments and submissions of counsel. At the time of her sentencing, Elkerson's advisory guideline sentencing range was 0 to 6 months' imprisonment. Elkerson did not receive credit for acceptance of responsibility at sentencing because, while on pre-trial release, she missed two scheduled urine screens in July 2009 and tested positive for cocaine on July 21, 2009. Elkerson's probationary sentence was a substantial break, particularly in light of her misconduct while on pre-trial release. Elkerson's probation carried with it numerous standard conditions, including periodic drug testing and participation in a substance abuse program. At sentencing the court expressly warned Elkerson about the need to comply with all conditions of probation and cited United States v. Tucker, 321 Fed. Appx. 307 (4th Cir. 2009) (per curiam) (unpublished), as reflecting the consequences of failing to comply with this court's conditions of probation.

Since sentencing on August 18, 2009, Elkerson blatantly violated the terms of her probationary sentence, including failing to participate as directed in a urinalysis program on three occasions, failing to answer truthfully inquiries by the probation officer on two occasions, and failing to notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer.

On May 13, 2010, the United States Probation Office's moved to revoke Elkerson's probationary sentence [D.E. 27]. As announced in open court on June 17, 2010, the court grants the Probation Office's motion to revoke, and sentences Elkerson to a term of 15 months' imprisonment. The court enters this order to explain Elkerson's sentence.

I.

On June 17, 2010, the court held a hearing to consider the Probation Office's motion to revoke Elkerson's probationary sentence. Before the hearing, the court and the parties received Elkerson's probation-violation worksheet and revocation-sentencing analysis from the Probation Office. At the probation revocation hearing, Elkerson admitted the first and third violations in the motion for revocation. The court received evidence as to the second violation. The court credited the testimony of U.S. Probation Officer Tuell Waters and found that Elkerson committed the second violation.

A.

A probationary sentence is "conditional and subject to revocation until its expiration or termination." 18 U.S.C. § 3564(e); see United States v. Verkhoglyad, 516 F.3d 122, 128 (2d Cir. 2008). If a defendant violates the conditions of probation, the court may continue probation or revoke it and "resentence the defendant under Subchapter A." 18 U.S.C. § 3565(a)(2). Subchapter A refers to 18 U.S.C. §§ 3551–3559. Revocation generally is mandatory for certain violations,

including refusing to comply with drug testing. See id. § 3565(b)(3). Section 3565 "plainly permits a district court to begin the sentencing process anew and to impose any sentence appropriate under the provisions of subchapter A, i.e., one that satisfies statutory and guideline requirements." United States v. Schaefer, 120 F.3d 505, 507 (4th Cir. 1997). Moreover, the court recognizes its discretion concerning whether to revoke Elkerson's sentence of probation and resentence her to a sentence that includes imprisonment. See 18 U.S.C. § 3563(e).

The Fourth Circuit has addressed the procedure a district court should use post-Booker in fashioning a probation-revocation sentence. In United States v. Moulden, 478 F.3d 652 (4th Cir. 2007), the Fourth Circuit stated:

> Of course, as always, the sentencing court must consider the policy statements contained in Chapter 7, including the policy statement range, as helpful assistance, and must also consider the applicable § 3553(a) factors. At the same time, however, the sentencing court retains broad discretion to revoke a defendant's probation and impose a term of imprisonment up to the statutory maximum. The court must provide a statement of reasons for the sentence imposed, as with the typical sentencing procedure, but this statement need not be as specific as has been required for departing from a traditional guidelines range.

Moulden, 478 F.3d at 656–57 (quotations and citations omitted); cf. United States v. Crudup, 461 F.3d 433, 438–39 (4th Cir. 2006) (describing the process a court should use post-Booker in fashioning a sentence for violating supervised release). Moreover, in facing a defendant who has repeatedly violated numerous terms of her probation, "[i]t is appropriate for a court . . . to take account of the fact that the policy statement range is based only upon the severity of the single most severe violation." Moulden, 478 F.3d at 658; cf. Crudup, 461 F.3d at 440.

Chapter 7 of the Sentencing Guidelines includes a revocation table suggesting a non-binding range of imprisonment for each grade of violation at each criminal history category. See U.S.S.G. § 7B1.4. "[T]he table itself is a 'policy statement' and not a 'guideline.'" Moulden, 478 F.3d at 655;

3

see U.S.S.G. § 7B1.4; Crudup, 461 F.3d at 435; United States v. Davis, 53 F.3d 638, 640–42 (4th Cir. 1995) (recognizing Chapter 7 policy statements "have always been non-binding"). The United States Sentencing Commission selected this approach in Chapter 7 to give courts "greater flexibility" in imposing a sentence for probation violations than a guideline would allow. See U.S.S.G., ch. 7, pt. A, introductory cmt. 1, 3(a). Even under the pre-Booker mandatory-guideline regime, the policy statement ranges in U.S.S.G. § 7B1.4 were treated as non-mandatory, and such sentences were left to the broad discretion of the district court. Moulden, 478 F.3d at 656; Davis, 53 F.3d at 640–42; United States v. Denard, 24 F.3d 599, 602 (4th Cir. 1994); see Verkhoglyad, 516 F.3d at 128–29. Moreover, the commentary to the policy statements in Chapter 7 recognizes the propriety of sentencing a defendant to a sentence higher than the policy statement in the Chapter 7 revocation table. See, e.g., U.S.S.G. § 7B1.4 cmt. n.3 (noting that sentence above the policy statement range may be warranted where Grade C violation is associated with high risk of new felonious conduct); Verkhoglyad, 516 F.3d at 129–30.

Similarly, at a probation-revocation hearing, the sentencing court is not bound by the advisory guideline sentencing range established at the time of the defendant's original sentencing hearing. See Verkhoglyad, 516 F.3d at 130 n.5, 135; see also United States v. Ray, 484 F.3d 1168, 1171–72 (9th Cir. 2007) (collecting cases). Rather, at the probation revocation hearing, the sentencing court must carry out its statutory duty, which includes imposing a sentence on the underlying crime of conviction that is "sufficient, but not greater than necessary, to comply with the purposes set forth in [the sentencing statute]." 18 U.S.C. § 3553(a); see id. § 3565(b). Of course, in doing so, the court may consider, but is not bound by, the advisory guideline sentencing range established at the defendant's original sentencing hearing. See, e.g., Verkhoglyad, 516 F.3d at 130 n.5. In fashioning a revocation sentence, "the sentencing court retains broad discretion to revoke a

4

defendant's probation and impose a term of imprisonment up to the statutory maximum." Moulden, 478 F.3d at 657; see Crudup, 461 F.3d at 439 (analyzing revocation of supervised release).

Under 18 U.S.C. § 3551(b), "[a]n individual found guilty of an offense shall be sentenced ... in accordance with the provisions of section 3553." Section 3553(a), in turn, requires a district court to consider a number of relevant sentencing factors, including the "applicable guidelines or policy statements issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(4)(B). The factors in section 3553(a) include, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, the need for the sentence to promote respect for the law, the need for the sentence to protect the public from further crimes of the defendant, and the need for the sentence to provide medical treatment, vocational training, or educational opportunities. Id. § 3553(a).

Finally, in probation-revocation proceedings, the court need not issue advance notice of the possible intent to impose a revocation sentence different from the imprisonment range in the Chapter 7 policy statement. See United States v. Ryans, 237 Fed. Appx. 791, 793 (4th Cir. 2007) (per curiam) (unpublished); see also United States v. Redcap, 505 F.3d 1321, 1323 (10th Cir. 2007); United States v. Baker, 491 F.3d 421, 423–24 (8th Cir. 2007); accord United States v. Taylor, 78 Fed. Appx. 893, 893 (4th Cir. 2003) (per curiam) (unpublished). Federal Rule of Criminal Procedure 32.1 governs sentences imposed after revocation of probation or supervised release and contains no notice requirement. Cf. Fed. R. Crim. P. 32(h).

B.

Because Elkerson refused to comply with drug testing procedures, the court revokes her probation and will impose a term of imprisonment. The statutory maximum in Elkerson's case is 60 months. See 18 U.S.C. § 1001. Elkerson incurred three Grade C violations for her misconduct.

5

See U.S.S.G. § 7B1.1(a)(3). The Chapter 7 policy statement range for Elkerson is 3 to 9 months' imprisonment. See id. §§ 7B1.1(b), 7B1.4.

As the Second Circuit has noted, "while a probation violation sentence plainly sanctions a defendant's breach of trust rather than his violation conduct, it is important not to lose sight of the fact that it does not sanction only the breach of trust." Verkhoglyad, 516 F.3d at 130 n.6 (emphasis removed). "Rather, it resentences the defendant for the crime of conviction mindful that he has breached the trust placed in him by a probationary sentence." Id.; see U.S.S.G., ch. 7, pt. A, introductory cmt. 3(b). In fashioning Elkerson's sentence, the court has considered the policy statements in Chapter 7, the original advisory guideline sentencing range established at defendant's original sentencing hearing, all arguments of counsel, defendant's statement, the evidence in the record, and all of the factors listed in 18 U.S.C. § 3553(a).

As for the policy statement's advisory imprisonment range, the court finds it inadequate to address Elkerson's breach of trust reflected in her numerous probation violations. After this court granted Elkerson a substantial break by sentencing her to a term of probation, Elkerson repeatedly flaunted the requirements of probation. Time and again, Elkerson trampled the conditions of this court's probationary sentence. To date, Elkerson has not accepted responsibility. Elkerson has treated the conditions of her probationary sentence as suggestions. See Moulden, 478 F.3d at 657–58. Elkerson's violations are numerous and material, and she has treated this court's leniency as a license to do as she pleases.

In fashioning Elkerson's sentence, the court has considered her statement at the probation-revocation hearing and finds that she is not credible. The court believes that Elkerson views her probation and these proceedings as something that she need not take seriously. It is unfortunate that Elkerson (a person who is employed and has children) has behaved in this way. Elkerson has

6

repeatedly breached this court's trust and must be punished. See U.S.S.G. ch. 7, pt. A, introductory cmt. 3(b); see also Verkhoglyad, 516 F.3d at 130; cf. Crudup, 461 F.3d at 437–38.

Elkerson's repeated violations represent contempt for this court's trust and the law. The court will impose a sentence that reflects the seriousness of Elkerson's breach of trust, reflects the seriousness of her underlying offense behavior, promotes respect for the law, deters both Elkerson and others like her, protects the public from further crimes of Elkerson, and permits a period for meaningful drug treatment. In fashioning an appropriate revocation sentence, the court recognizes its duty to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [the sentencing statute]." 18 U.S.C. § 3553(a).

Elkerson incurred three Grade C violations for repeatedly violating the conditions of her probation. The court takes into account not only the severity of Elkerson's violations, but also their number, in fashioning her revocation sentence. See Moulden, 478 F.3d at 658; cf. Crudup, 461 F.3d at 440. Moreover, the Chapter 7 policy statements contemplate that where a defendant commits a Grade C violation that is associated with a high risk of new felonious conduct, a greater term of imprisonment than that suggested by the revocation table may be appropriate. See U.S.S.G. § 7B1.4 cmt. n.3. Here, Elkerson has committed numerous Grade C violations, and the risk of which the policy statement warns (i.e., new felonious conduct) is on the horizon. Elkerson obviously has a serious problem with using illegal drugs. This court need not wait for Elkerson's conduct to rise to felonious behavior to take action.

In fashioning Elkerson's revocation sentence, the court recognizes that it is resentencing Elkerson for her original crime of conviction, in addition to her blatant breach of trust. See Verkhoglyad, 516 F.3d at 130 n.6. On May 18, 2009, Elkerson pleaded guilty, pursuant to a plea agreement, to one count of making false statements in violation of 18 U.S.C. § 1001. As reflected

7

in the PSR, in August 2006, Elkerson sought and obtained debit cards and personal identification numbers ("PINs") from students at the Carolina Beauty College in Durham, North Carolina, and customers at a hair salon where she worked, in order to perpetrate bank fraud. She thereafter provided the debit cards and PINs to her two cohorts, and was paid for doing so. However, in April 2007, when the postal inspector asked Elkerson about her involvement, she denied that she had participated. Elkerson stated that no one had given her a debit card and that she had never touched a debit card belonging to anyone else. In October 2007, one of Elkerson's cohorts reiterated that she had been involved and estimated that she had been paid between $15,000 and $20,000 for obtaining individuals' debit cards and PINs. In May 2008, Elkerson again was interviewed by a postal inspector concerning her participation, and she again denied involvement. The court considers Elkerson's underlying offense behavior to be very serious.

The court also notes that the probationary sentence failed to deter Elkerson. She has continued to trample the conditions of her probation. See 18 U.S.C. § 3553(a)(2)(B). The public needs to be protected from Elkerson. Other probationers need to be deterred from choosing the path that Elkerson has chosen. Moreover, Elkerson desperately needs substance abuse treatment and has demonstrated that such treatment does not work for her on an out-patient basis. Cf. 18 U.S.C. § 3553(a)(2)(D); Crudup, 461 F.3d at 440; United States v. Tsosie, 376 F.3d 1210, 1218–19 (10th Cir. 2004) (collecting cases affirming the imposition of lengthy revocation sentences to allow defendants to undergo substance abuse treatment while in custody). The sentence will provide ample time for such treatment.

Accordingly, having considered the policy statements in Chapter 7, the advisory policy statement range in U.S.S.G. § 7B1.4(a), all of the relevant factors listed in 18 U.S.C. § 3553(a), all evidence in the record, defendant's statement, the probation officer's statement and testimony, and

8

all arguments and submissions of counsel, the court finds that a sentence within the advisory policy statement range is not sufficient. See 18 U.S.C. § 3553(a); Moulden, 478 F.3d at 657–58; Crudup, 461 F.3d at 439–40. Rather, for the reasons discussed in open court and in this order, the court hereby sentences Elkerson to a term of imprisonment of 15 months. This sentence is sufficient, but not greater than necessary, to fulfill the purposes listed in section 3553(a). Cf. Tucker, 321 Fed. Appx. at 308–10 (affirming district court's decision to impose a 72-month revocation sentence, even though the sentence was greater than both defendant's original advisory guidelines range and the Chapter 7 policy range at the revocation hearing); Verkhoglyad, 516 F.3d at 135 (rejecting argument that 57-month revocation sentence was substantively unreasonable because it was above the Chapter 7 policy range of 5 to 11 months' imprisonment); United States v. Powell, 163 Fed. Appx. 765, 766–68 (11th Cir. 2005) (per curiam) (unpublished) (affirming revocation sentence of 60 months — the statutory maximum — as reasonable in light of defendant's repeated violations and total disregard of the criminal justice system, even though Chapter 7 policy range was 4 to 10 months' imprisonment). Notably, Elkerson's sentence is well below the 60-month statutory maximum authorized by law. See 18 U.S.C. § 1001; see also Tucker, 321 Fed. Appx. at 308–10; Moulden, 478 F.3d at 657; Crudup, 461 F.3d at 439.

## II.

The court has imposed Elkerson's sentence for the reasons discussed herein and the reasons discussed in open court, which are hereby incorporated by reference. The court recommends that Elkerson serve her sentence at FCI Alderson. The court also recommends that, while incarcerated, she receive the most intensive substance abuse treatment available. This order memorializes the court's judgment as announced at defendant's probation-revocation hearing on June 17, 2010, and

is not intended to alter or amend the court's judgment with respect to defendant as announced in open court.

Defendant may appeal her sentence if she believes that her sentence is contrary to law. With few exceptions, any notice of appeal must be filed within 14 days of judgment being entered on the docket in her case. If defendant is unable to pay the cost of an appeal, she may apply for leave to appeal in forma pauperis. If she so requests, the Clerk of Court will prepare and file a notice of appeal.

SO ORDERED. This 18 day of June 2010.

JAMES C. DEVER III
United States District Judge